**UNITED STATES of America,
Appellee,**

v.

**Nicholas R. FINO et al., Appellants.**

**Nos. 500, 561 to 566, Docket 72–2017,
72–2054 to 72–2059.**

United States Court of Appeals,
Second Circuit.

Argued Jan. 26, 1973.

Decided May 1, 1973.

Frederick W. Read, III, U. S. Dept. of Justice, Washington, D. C. (John T. Elfvin, U. S. Atty., Buffalo, N. Y., Sidney M. Glazer, Dept. of Justice, Washington, D. C., on the brief), for appellee.

Peter L. Parrino, Buffalo, N. Y. (Parrino & Cooper, Buffalo, N. Y., on the brief), for appellants Nicholas R. Fino, Rosalie L. Fino, Joseph M. Giallella, Nicholas Alberti and Anthony J. Tripi.

Joseph D. Bermingham, Jr., Buffalo, N. Y. (Doyle, Diebold & Bermingham, Buffalo, N. Y., on the brief), for appellant Joseph Randazzo,

James P. Renda, Buffalo, N. Y., for appellant Gaetano C. Agro.

Before MOORE, HAYS and FEINBERG, Circuit Judges.

HAYS, Circuit Judge:

These are appeals from convictions entered after a trial by jury in the United States District Court for the Western District of New York on charges of conducting a gambling business in violation of 18 U.S.C. § 1955 and of conspiracy to commit that offense in violation of 18 U.S.C. § 371. All the appellants were convicted on the substantive count and all but Agro and Randazzo on the conspiracy count.

Nicholas Fino was sentenced to concurrent terms of three years and to fines totalling $30,000; Rosalie Fino and Agro to two years probation; Giallella, Alberti, Randazzo and Tripi to 18 months imprisonment and, in the case of Agro and Tripi, to fines respectively of $5,000 and $10,000.

Most of the relevant facts are undisputed. Nicholas Fino supervised a large-scale gambling operation in the Buffalo, New York area. The location of the betting office to which "writers" who accepted bets on horse races telephoned their bets changed frequently. At one time it was at the home, of Agro and at a later time at the home of Nicholas Fino. Gialella Tripi and Rosalie Fino took bets over the betting office telephones from the "writers" who reported the bets in code. Fino, Alberti, Tripi and Randazzo from time to time computed the balances in the accounts of the individual "writers."

Much of the evidence against the appellants consisted of recordings of conversations overheard in the course of court-authorized wiretaps.

The appellants contend (1) that the use of the wiretap evidence was improper in several respects; (2) that 18 U.S.C. § 1955 is unconstitutional; (3) that the court erred in permitting the jury to consider events occurring before the effective date of 18 U.S.C. § 1955; (4) that the court erred in submitting both counts of the indictment to the jury; (5) that the court erred in its charge to the jury by defining the word "conduct" too broadly; and (6) that the convictions of Agro and Randazzo were "contrary to law and against the weight of the evidence."

(1) The Wiretaps.

Appellants' first contention with respect to the wiretap evidence is that Section 2518 of Title 18, authorizing court-approved wiretaps, is unconstitutional. In United States v. Tortorello, 480 F.2d 764 (2d Cir. 1973) this Court upheld the constitutionality of that statute. In the *Tortorello* case the court ruled specifically on each of the areas in which these appellants challenge the statute, particularity, notice and duration and found no constitutional defect. See also United States v. Cox, 449 F.2d 679 (10th Cir. 1971), cert. denied, 406

U.S. 934, 92 S.Ct. 1783, 32 L.Ed.2d 136 (1972); United States v. Cox, 462 F.2d 1293 (8th Cir. 1972); United States v. Cafero, 473 F.2d 489 (3d Cir. 1973).

■ Appellants also argue that § 1955(c) creates an unconstitutional presumption. That section states that if a gambling operation is shown to have had five or more persons involved in conducting it in violation of state law and has operated for two or more days then for the purposes of probable cause for the issuance of warrants, the statutory requirement of a gross daily revenue of $2000 shall be deemed to have been satisfied. We would uphold that presumption for the purposes of probable cause, see United States v. Palmer, 465 F.2d 697, 699 (6th Cir. 1972), cert. denied, 409 U.S. 874, 93 S.Ct. 119, 34 L.Ed.2d 126 (1972), but even without it there was abundant evidence to establish the probable cause required for the issuance of the orders in this case.

■ Appellants' argument with respect to probable cause for the issuance of the wiretap orders is not directed at the factual basis for the issuance of these orders. The facts alleged were, as we have said, abundantly sufficient to justify the orders. What appellants seek to attack is the statutory provision that requires "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." Appellants argue that the facts presented in the affidavits on which the wiretap orders were based try to show that there was insufficient basis for the issuance of a search warrant. By reason of this showing, say the appellants, the government having conceded the absence of probable cause for one type of search, cannot claim the existence of probable cause for another type, i. e., the wiretap. However the appellants' conclusion does not follow from their premises. It is entirely reasonable to require, as the statute does, that the government show its reasons for not proceeding by way of search warrants without thereby establishing the absence of probable cause for a wiretap. This is exactly what the government did in the present case.

Appellants' objections to the procedure employed by the Department of Justice for authorizing the wiretap must fail. See United States v. Pisacano, 459 F.2d 259 (2d Cir. 1972); United States v. Becker, 461 F.2d 230 (2d Cir. 1972); United States v. Fiorella, 468 F.2d 688 (2d Cir. 1972).

■ Appellants urge that the wiretap orders conferred broader powers than are authorized by the minimization requirements of 18 U.S.C. § 2518, and that the agents in executing the wiretaps exceeded the limits imposed by the orders. As to the scope of the orders the appellants' principal point is that the orders did not specify in detail the exact methods the agents should use in minimizing interception of communications of which the interception was not authorized. The orders did in fact contain a considerable amount of specification (for example as to hours of the day when the telephones could be tapped). Appellants do not suggest what additional specification should have been included. As the government points out it was impossible for the court to provide detailed definitions of the types of conversations which should be intercepted, since the exact contents of the conversations could hardly be known in advance of listening to them at least in part. Under these circumstances general instructions on minimization are to be considered as compliance with Section 2518.

■ The nature of the appellants' objections to the alleged failure of the agents to observe the minimization limitations imposed by the orders can be gathered from the appellants' claim that incoming calls were monitored under the first of the wiretap orders although that order authorized the tapping of outgoing calls only. Examination of the order and the papers on which it was based demonstrates clearly that the order con-

templated tapping of incoming as well as outgoing calls, as, in common sense it must have done, with respect to a gambling operation of the type here involved.

Appellants claim that many telephone calls having nothing to do with gambling operations were monitored by the agents. The figures show, however, that only a very small proportion of the recorded calls (about two percent) were not concerned with gambling. We accept the finding of the district court that "the evidence established a good faith effort on the part of the monitoring agents to discontinue all calls believed to be of a non-pertinent nature."

(2) Constitutionality of Section 1955.

■ This court has ruled that Congress did not exceed its constitutional authority under the Commerce Clause in enacting Section 1955. United States v. Becker, 461 F.2d 230 (2d Cir. 1972). See also United States v. Riehl, 460 F.2d 454 (3d Cir. 1972); United States v. Harris, 460 F.2d 1041 (5th Cir. 1972), cert. denied, 409 U.S. 877, 93 S.Ct. 128, 34 L.Ed.2d 130 and Schneider v. United States, 459 F.2d 540 (8th Cir. 1972), cert. denied, 409 U.S. 877, 93 S.Ct. 129, 34 L.Ed.2d 131.

(3) The Ex Post Facto Claim.

■ Appellants' contention that the admission of certain evidence relating to events prior to the effective date of 18 U.S.C. § 1955 constitutes a violation of the *ex post facto* clause of the Constitution is without merit. Evidence of behavior antedating the adoption of the statute was admissible as bearing on the existence and purpose of the conspiracy and the significance of later behavior. See United States v. Smith, 464 F.2d 1129, 1133 (2d Cir. 1972). The district court received the testimony subject to

an entirely appropriate limiting instruction.

(4) Submission of Both Substantive and Conspiracy Counts to the Jury.

■ The contention that it is error to submit to the jury counts under both 18 U.S.C. § 371 and § 1955 was raised and rejected by this court in United States v. Becker, supra, where the court said, 461 F.2d at p. 234:

"as long as the conspiratorial concert of action and the substantive offense underlying it are not coterminous and fewer participants are required for the commission of the substantive offense than are named as joining in a conspiracy to commit it, there is no infirmity in the conspiracy indictment."

(5) Definition of "conduct" in the Trial Court's Charge to the Jury.

The trial court's definition of "conduct" in its charge to the jury was entirely correct. See United States v. Becker, supra.

(6) Sufficiency of the Evidence as to Agro and Randazzo.

■ The evidence against Agro and Randazzo was sufficient to support their convictions.

The evidence showed that the betting office was operated at Agro's house during a part of the period covered by the indictment. There was evidence based on monitored calls that on at least two occasions Agro accepted bets over the telephone listed in his name.

The evidence against Randazzo showed that on at least two occasions he did the computations at the weekly accounting of the "writers."

Since we find no infirmity in the convictions, we affirm.